**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAFARI CLUB
INTERNATIONAL; JOAN
WHIPPLE,
*Plaintiffs-Appellees*,

v.

DR. LAWRENCE P. RUDOLPH,
*Defendant-Appellant.*

No. 14-56236

D.C. No.
8:13-cv-01989-JVS-AN

AMENDED OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted June 10, 2016
Pasadena, California

Filed January 18, 2017
Amended February 10, 2017

Before: Johnnie B. Rawlinson and Carlos T. Bea, Circuit
Judges, and Richard Seeborg,* District Judge.

Opinion by Judge Seeborg

---

*The Honorable Richard Seeborg, United States District Judge for the
Northern District of California, sitting by designation.

## SUMMARY**

### California Anti-SLAPP Statute

The panel replaced the opinion filed on January 18, 2017 with an amended opinion, and affirmed the district court's order denying Dr. Lawrence Rudolph's motion to strike under California's anti-SLAAP statute plaintiffs' claims for violation of California Penal Code section 632, negligence per se, and common law invasion of privacy, arising after Rudolph surreptitiously recorded a conversation with plaintiff Safari Club International President John Whipple, and posted it on the Internet for public consumption.

The panel held that though Rudolph could show that plaintiffs' claims arose from activity Rudolph took in furtherance of his right to free speech, plaintiffs could show a reasonable probability of prevailing on each of the challenged claims. The panel accordingly affirmed the district court's denial of Rudolph's motion to strike under the anti-SLAAP statute.

Raising the issue *sua sponte*, the panel also held that Joan Whipple, who substituted into the action as John Whipple's successor-in-interest after his death, had standing to bring a common-law invasion of privacy claim.

The panel denied Rudolph's request for an additional attorney fee award. The panel remanded for further proceedings.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kenneth M. Argentieri (argued), Duane Morris LLP, Pittsburg, Pennsylvania; Patricia P. Hollenbeck and Heather U. Guerena, Duane Morris LLP, San Diego, California; for Defendant-Appellant.

Albert C. Nicholson (argued) and Vince M. Verde, Ogletree Deakins Nash Smoak & Stewart P.C., Costa Mesa, California; Joseph J. Nardulli, The Wolf Law Firm, Irvine, California; for Plaintiffs-Appellees.

**OPINION**

SEEBORG, District Judge:

Dr. Lawrence P. Rudolph is an award-winning hunter who made his way to the top of Safari Club International ("SCI"), a sport hunting and wildlife conservation organization. Following his term at the helm, various SCI members accused him of official misconduct, stripped him of his awards, and then exiled him permanently from the association. That's when the season opened. Rudolph sued SCI and its president, his friend, John Whipple, whom he assured was named only by virtue of his position at the head of the organization. With his quarry in sight, Rudolph lured Whipple to lunch, brought up the pending litigation, recorded the conversation surreptitiously, and then posted it on YouTube for public consumption.

Outraged, Whipple and SCI fired back at Rudolph with a barrage of legal claims, including statutory invasion of privacy, negligence per se, and common law invasion of

privacy. The district court granted Rudolph's motion to strike under California's anti-SLAPP statute as to four claims for relief, but denied the motion as to these privacy claims, finding plaintiffs had demonstrated a reasonable probability of prevailing on the merits. On appeal, Rudolph seeks to line up the perfect shot, arguing all three claims must fail because there can be no objectively reasonable expectation of confidentiality in a conversation that occurs in a public place. Rudolph's marksmanship, apparently on target in the tundra, here is wide of the mark. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. FACTS

Plaintiff-Appellee SCI is a hunting and wildlife conservation organization with roughly 50,000 members and nearly 200 chapters across twenty-six different countries. Defendant-Appellant Rudolph has been an SCI member for approximately twenty-five years and became a lifetime member of the organization in 2006. The next year, Rudolph received the "Weatherby Award," which recognizes one individual annually for hunting achievement, outstanding support of conservation, and dedication to ethical sport hunting. Rudolph has occupied a number of organizational positions throughout his tenure with SCI, culminating in consecutive one-year terms as President of SCI and the Safari Club International Foundation ("SCIF").

Following his second year at the helm of the group, Rudolph was hired to perform public relations as the Chief Communications Officer of SCI. In 2012, however, a conflict arose between Rudolph and the organization, with various members accusing him of, among other things, adultery, making false statements, and intellectual property

infringement. Believing he had breached his duties of loyalty and care to the organization, SCI terminated Rudolph's contract, stripped him of his awards, and expelled him from membership. Whipple was president of SCI at the time of Rudolph's expulsion and signed the letter officially terminating Rudolph's membership.[1]

---

[1] In November 2014, John Whipple passed away and his wife Joan Whipple substituted into this action as his successor-in-interest. *See* Cal. Civ. Proc. Code § 377.20 (providing generally for survival of causes of action after a person's death); *id.* § 377.21 (providing for continuation of pending actions that survive death). She maintains his claims for common-law invasion of privacy, invasion of privacy in violation of California Penal Code sections 632 and 637.2, and negligence per se for violation of a duty owed under sections 632 and 637.2. *See Sullivan v. Delta Air Lines, Inc.*, 15 Cal. 4th 288, 298–99 (1997) (recognizing California's survival statute covers "actions for personal torts that do not result in physical injury," including, among other actions, invasion of privacy). Although the parties have not raised the issue of Joan Whipple's standing, we recognize a duty to examine this issue *sua sponte*. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (citation omitted) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing."). Plaintiff Safari Club International has standing to bring the statutory invasion of privacy and negligence per se claims, so we need not decide if Whipple has standing to bring those particular claims. *See Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), *as amended* (Mar. 8, 1994) (citing *Carey v. Population Services Int'l*, 431 U.S. 678, 682 (1977)) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others."). As Safari Club does not join in Joan Whipple's common-law invasion of privacy claim, we must determine if she has standing to bring that claim. We conclude that she does. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (recognizing that a "party seeking to bring a survival action" will have standing where she carries her "burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action"); *cf. Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773–74 (2000) (holding

Stung and defiant, Rudolph sued SCI and several of its board members, including Whipple, in November 2012 in the U.S. District Court for the Western District of Pennsylvania. The court dismissed the individual defendants on jurisdictional grounds and Rudolph thereupon refiled the lawsuit against the same individuals in the U.S. District Court for the District of Wyoming. These actions center on Rudolph's claims that SCI members defamed him maliciously in order to ruin his reputation and ultimately to run him out of the organization.

On February 20, 2013, while Whipple was a defendant in the Pennsylvania action, Rudolph invited him to meet for lunch at a restaurant in Los Angeles. At that time, Whipple still considered Rudolph a good friend, and believed Rudolph felt the same way. Indeed, Whipple recalled Rudolph as saying he sued him in Pennsylvania only because he was the current president of SCI. In any event, Whipple said yes and they met at his residence before departing for Wineworks for Everyone, a wine store and restaurant that is open to the general public.

Rudolph and Whipple met over lunch for approximately five hours. There were several other patrons and employees in the restaurant at the time the meeting took place. Whipple offered his own declaration in which he stated that those other patrons in the room were not within earshot of their

a *qui tam* plaintiff had Article III standing to maintain an action because "the assignee of a claim has standing to assert the injury in fact suffered by the assignor"). Because Joan Whipple's claims are proper under California law, *see* Cal. Civ. Proc. Code §§ 377.20, 377.21; *Sullivan*, 15 Cal. 4th at 298–99, she has standing to assert them before the district court, *see Moreland*, 159 F.3d at 369.

conversation. He also claimed he and Rudolph kept their voices fairly low, and that when servers approached, they stopped talking about anything substantive. Rudolph, by contrast, insists his recordings demonstrate that the other patrons were close enough to overhear their conversation, and that staff and other patrons repeatedly walked past the table throughout the meeting. Rudolph further claims Whipple never lowered his voice overtly or manifested body language that in any way would suggest he was attempting to maintain privacy or intended to keep the conversation confidential.

Rudolph eventually steered the discussion to the ongoing litigation between himself, Whipple, and SCI. They talked about Whipple's role in the underlying events and the conduct of various SCI board members. Unbeknownst to Whipple, Rudolph recorded both audio and video of the entire conversation ("Whipple Video"), which he later reduced into a film for public dissemination called: Rudolph v. Safari Club International SCI President Tells the Truth on Video Rudolph Exonerated!! ("Rudolph Video"). The Rudolph Video allegedly contains clips confirming the allegations against Rudolph were false and malicious. Importantly, Rudolph never asked for, nor obtained, Whipple's consent to record the conversation, and Whipple maintained he never would have given Rudolph his consent.

Later that year, SCI and Whipple brought suit in the Orange County Superior Court alleging Rudolph violated section 632 of the California Penal Code, outlawing the recording of a "confidential communication" without the consent of all parties to the communication. *See* Cal. Penal Code § 632. Plaintiffs sought to enjoin Rudolph from introducing the Whipple Video into evidence in the Pennsylvania and Wyoming actions, and the state court

issued a temporary restraining order ("TRO") on December 20, 2013. Following removal of the action to the district court and a hearing, the district court denied plaintiffs' request for a preliminary injunction. The denial was affirmed by this Court on December 26, 2014.

The TRO soon dissolved and Rudolph posted both videos on YouTube for public viewing, with SCI members being the target audience.[2] Rudolph claims he created the videos for use in his litigation against SCI and various SCI board members, to inform SCI members about the details of the actions, to repair his reputation, and to stop those in power at SCI from wasting SCI's resources.

Plaintiffs filed a First Amended Verified Complaint ("FAC") soon after the videos were posted, this time asserting seven claims for relief: (1) statutory invasion of privacy, Cal. Penal Code §§ 632, 637.2; (2) injunctive relief; (3) negligence per se; (4) common law invasion of privacy; (5) false light invasion of privacy; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress.

---

[2] The Whipple video is publicly available at: https://www.youtube.com/watch?v=dU7MoWhzIJs. The Rudolph video (an edited version of the Whipple video, which Rudolph titled, "Rudolph v. Safari Club International SCI President Tells the Truth on Video Rudolph Exonerated!!") is publicly available at: https://www.youtube.com/watch?v=2aYY0YF4ktA.

On March 13, 2014, Rudolph moved to strike the FAC pursuant to California's "anti-SLAPP"[3] statute, *see* Cal. Civ. Proc. Code § 425.16, and concurrently moved to dismiss. Plaintiffs opposed the motions by relying only on the verified FAC, as opposed to invoking any other evidence in the record.

The district court, however, looked to the entire record, including a declaration submitted by Whipple with his *ex parte* application for a TRO, which also appeared as an attachment to the notice of removal. It then granted in part and denied in part Rudolph's motion to strike. Rudolph moved to reconsider on the ground the court denied him due process by unilaterally scouring the record, digging up the declaration, and relying on it to decide his motions. Granting the motion to reconsider, the district court then proceeded to reaffirm its prior order, finding the Whipple declaration properly had been considered.

On July 29, 2014, Rudolph timely appealed from that portion of the district court's June 2, 2014, order which denied Rudolph's motion to strike. Rudolph maintains the court erred in denying the motion on the three remaining claims: (1) statutory invasion of privacy, Cal. Penal Code §§ 632, 637.2; (2) negligence per se; and (3) common law invasion of privacy.

---

[3] California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that "masquerade as ordinary lawsuits," *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1994), but are intended to deter individuals "from exercising their political or legal rights or to punish them for doing so[,]" *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003).

## II. STANDARD OF REVIEW

This Court reviews the district court's denial of a special motion to strike *de novo*. *See Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014); *Martinez v. Metabolife Int'l Inc.*, 113 Cal. App. 4th 181, 186 (2003).

## III. DISCUSSION

California's anti-SLAPP statute authorizes a "special motion to strike" any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). Courts evaluating anti-SLAPP motions first ask if the defendant has shown the challenged cause of action "aris[es] from" activity taken "in furtherance" of the defendant's right to petition or free speech. *Id.* If so, the burden shifts to the plaintiff to show "a [reasonable] probability of prevailing on the challenged claims." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).

Here, Rudolph maintains the court should have stricken the statutory invasion of privacy claim, the negligence per se claim tied to that cause of action, and the common law invasion of privacy claim. Though Rudolph can show the claims arise from activity he took in furtherance of his right to free speech, plaintiffs can show a reasonable probability of prevailing on the challenged claims. Accordingly, the district court did not err in denying in part Rudolph's special motion to strike.

## A.  "Arising from" Protected Activity

Rudolph's first task is to make a prima facie showing that each cause of action against him "aris[es] from" activity he took "in furtherance" of his right to petition or free speech. Cal. Civ. Proc. Code § 425.16(b)(1).    "[T]he critical consideration is whether the cause of action is *based on* the defendant's protected" conduct.  *Mindys*, 611 F.3d at 597 (quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002)). Specifically, "'the act underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' must *itself* have been an act in furtherance of the right of petition or free speech." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66 (2002) (quoting *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1003 (2001)).

### 1.  The Conduct Underlying Each Claim.

Here, the critical act underlying each claim is Rudolph's recording of his conversation with Whipple.  This follows from a quick explanation of the elements of each claim.

The first claim asserts a violation of Section 632 of the California Penal Code.  That provision bars the recording of a "confidential communication" without the consent of all parties to the communication. *See* Cal. Penal Code § 632(a). A communication is confidential if it is "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." *Id.* § 632(c).  The statute excludes, however, "a communication made in a public gathering . . . or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id.*  Though the parties dispute whether the

restaurant conversation can be categorized as a confidential communication, there is little doubt the precise act at the heart of this claim is Rudolph's making of the surreptitious recording.

Plaintiffs next assert a claim for negligence per se, which requires showing: (1) a defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused injury; (3) the injury resulted from an occurrence the enactment was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute was intended to protect. *Ramirez v. Nelson*, 44 Cal. 4th 908, 917–18 (2008). The statute plaintiffs invoke is section 632 of the California Penal Code, therefore tying this cause of action to the surreptitious recording mentioned above.

The final claim asserts an invasion of privacy under California common law, which requires "(1) intrusion into a private place, conversation[,] or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 231 (1998). Once again, the act plaintiffs invoke as an intrusion is Rudolph's recording of the discussion with Whipple. In sum, the act of making the recording without Whipple's knowledge or consent underlies all three claims in this case.

## 2. Rudolph's Conduct Furthered the Exercise of Free Speech

The next question is whether Rudolph's conduct was taken "in furtherance" of protected activity. The anti-SLAPP statute expressly recognizes four categories of protected speech and petitioning, three of which are implicated here: "any written or oral statement or writing made in connection

with an issue under consideration . . . [by a] judicial body," Cal. Civ. Proc. Code § 425.16(e)(2), "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," *id.* § 425.16(e)(3), and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest," *id.* § 425.16(e)(4). Rudolph need only show the conduct underlying each claim falls within one protected category. Rudolph's making of the surreptitious recording falls within section 425.16(e)(4).[4]

To start, that section does not require a "statement" by Rudolph; rather, it protects "conduct" in furtherance of the right of free speech in connection with a public issue. Next, California authority suggests Rudolph's creation of the recording was an act in furtherance of the exercise of free speech. In *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156 (2003), two reporters met a doctor at his clinic and secretly recorded their private consultations on audio and videotape. *Id.* at 161–62. Portions of the tapes were later broadcast in a segment called "Caught in the Act," which claimed the doctor prescribed Vicodin without conducting proper medical examinations. *Id.* at 162. The doctor brought suit under section 632 and argued, like SCI does here, the illegal act of recording does not constitute protected conduct under the anti-SLAPP statute. *Id.* at 165. Concluding to the contrary, the court noted the statute covers "conduct in furtherance of the exercise" of free speech, and found the surreptitious recording—which it categorized as "newsgathering"—was conduct in furtherance of that right.

---

[4] Rudolph also contends his conduct falls within sections 425.16(e)(2) and (3), but those arguments need not be reached.

*Id.* at 166.  Rudolph contends his conduct advanced the "right of free speech in connection with a public issue" because he published the two videos to SCI's 50,000 members "to influence issues regarding governance" of the organization. Opening Brief ("OB") at 19.  Rudolph's act of recording is therefore akin to the "newsgathering" detailed in *KCOP*, meaning it constitutes conduct undertaken in furtherance of his subsequent exercise of free speech.

Plaintiffs counter that Rudolph's conduct does not fit within the anti-SLAPP statute because he violated section 632, and illegal conduct is not constitutionally protected.  At this point in the proceedings, however, it is far from clear that Rudolph's creation of the recording actually violated section 632, and unless the conduct conclusively is shown or admitted to be illegal, a defendant can still invoke the anti-SLAPP statute.  *Flatley v. Mauro*, 39 Cal. 4th 299, 317 (2006).  In particular, the California Supreme Court held the statute may be invoked unless the conduct is "illegal as a matter of law," meaning the defendant "concedes" or "uncontroverted and conclusive evidence" establishes the speech or petitioning activity is illegal.  *Id.* at 320.  To find otherwise would eviscerate the anti-SLAPP statute's protections because the plaintiff could preclude the statute's application simply by alleging criminal conduct by the defendant.

As more fully explained below, section 632 outlaws only the surreptitious recording of "confidential communications," but a communication is not confidential if "made in a public gathering" or the parties reasonably may expect that it "may be overheard." *See* Cal. Penal Code §§ 632(a), (c).  In light of that standard, Rudolph's creation of the recording may or may not be criminal given the conversation took place in a

restaurant open to the public when other customers were present. The upshot is that Rudolph is not precluded from bringing an anti-SLAPP motion in the first instance, and *KCOP* establishes his conduct fits within a protected category—section 425.16(e)(4).

Rudolph's conduct was also connected to an issue of public interest. "[T]he definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Rivero v. Am. Fed'n of State, Cty., and Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 920 (2003) (quotation marks omitted). The *Rivero* court surveyed the cases that had examined the boundaries of a "public issue," finding "the subject statements either concerned a person or entity in the public eye, conduct that could directly affect a large number of people beyond the direct participants[,] or a topic of widespread, public interest." *Id.* at 924 (citations omitted).

Here, the recording implicates public issues because it involved two presidents of an organization with 50,000 members, and was published on the Internet to promote reform of the organization and to "stop those in power at SCI from wasting SCI's resources." Rudolph specifically criticized SCI leadership for mismanagement and abuse at the financial expense of the organization's members. These statements fall within the ambit of the statute's broad

definition of an issue that implicates the public interest.[5]  *See, e.g.*, *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) (statements about governance of homeowners association with 3,000 members concerned the public interest); *Ludwig v. Superior Court*, 37 Cal. App. 4th 8 (1995) (development of a mall was "clearly a matter of public interest").

In sum, mindful that the statute must be "construed broadly" to "encourage continued participation in matters of public significance," Cal. Civ. Proc. Code § 425.16(a), Rudolph adequately has shown each cause of action "aris[es] from" activity taken "in furtherance" of his right to free speech, *id.* § 425.16(b)(1).  Specifically, the creation of the recording is akin to the newsgathering found to further the exercise of free speech.  The statements published for public consumption also implicate public issues because they concern the governance of an organization that impacts a broad segment of society.  Rudolph accordingly has met his burden at step one of the anti-SLAPP analysis.

## B.  Reasonable Probability of Prevailing

At step two, the burden shifts to Whipple and SCI to show "a [reasonable] probability of prevailing on the challenged claims."  *Mindys*, 611 F.3d at 595.  To do so, they need only

---

[5] Plaintiffs submit Rudolph has not shown the requisite connection because the making of the recording is not itself a public issue, and the public has no interest in the litigation pending in Pennsylvania and Wyoming.  This argument is unpersuasive.  The surreptitious recording need only be conduct that *advances* the exercise of free speech on an issue of public interest.  *See KCOP*, 110 Cal. App. 4th at 166.  By exposing alleged corruption in SCI, the making of the recording fits within that framework.

"state and substantiate a legally sufficient claim," *id.* at 598–99 (quotation marks omitted), that is, "plaintiff[s] must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff[s] is credited." *Id.* at 599 (quoting *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)). "The applicable burden 'is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff.'" *Id.* (quoting *Metabolife*, 264 F.3d at 840). Importantly, "[t]he court 'does not weigh the credibility or comparative probative strength of competing evidence,' but 'should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" *Id.* (quoting *Wilson*, 28 Cal. 4th at 821).**[6]**

## 1. Statutory Invasion of Privacy

The first claim is for invasion of privacy under section 632 of the Penal Code. Plaintiffs must show it is legally sufficient and supported by sufficient facts to sustain a favorable judgment if their evidence is credited. *Mindys*, 611 F.3d at 599.

---

**[6]** Rudolph conceded at oral argument it is appropriate to consider the Whipple declaration, and the allegations in the verified complaint generally mirror those appearing in that declaration. Accordingly, we need not reach whether the district court erred in finding a verified pleading may not be considered when assessing a plaintiff's probability of success at step two.

Section 632 renders liable "[e]very person who, intentionally and without the consent of all parties to a confidential communication . . . eavesdrops upon or records the confidential communication" by "means of any electronic amplifying or recording device." *See* Cal. Penal Code § 632(a). The term "confidential communication" includes:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but *excludes* a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

*Id.* § 632(c) (emphasis added). The California Supreme Court found "a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1464 (2014) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002)).

The Whipple declaration makes out a prima facie case for a violation of section 632, and furnishes an evidentiary basis sufficient for a jury to find in plaintiffs' favor. Whipple states Rudolph contacted him for lunch on February 20, 2013, and they met for five hours at a restaurant called Wineworks for Everyone. Though there were "5 to 10 other patrons in the room," Whipple testified the conversation "was not capable

of being heard," and noted "any time a waiter or patron came to or by the table, we stopped talking about anything of substance." Whipple then declared he never consented to any recording of the conversation, but learned Rudolph recorded the entire discussion by audio and video means. These allegations, if ultimately proven, reflect that Rudolph recorded the conversation without Whipple's consent, in circumstances under which Whipple reasonably could expect his statements would not be overheard. Accordingly, a reasonable jury could find in plaintiffs' favor should they credit Whipple's declaration.

Rudolph fires off four arguments aimed at upending this conclusion, each of which misses the mark. First, Rudolph submits plaintiffs present no evidence the communication was confidential because the Whipple declaration relates exclusively to Whipple's subjective beliefs. Yet, Whipple was a firsthand participant in the conversation and his declaration speaks not only to his beliefs, but to the objective circumstances surrounding the discussion at the restaurant.

Second, Rudolph submits the unedited Whipple Video defeats the declaration because it proves there can be no objectively reasonable expectation the conversation was confidential. This argument misconstrues the task the parties presented to the district court, for it asks for an explicit weighing of evidence—i.e., the declaration versus the video. At step two, however, "we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 468–69 (2012) (quoting *Overstock.com, Inc. v. Gradient Analytics*, 151 Cal. App. 4th 688, 699–700 (2007)). The video does not defeat the

Whipple declaration as a matter of law because, as the district court found, what one person might consider a normal pause when speaking to a waiter, another could reasonably find to be a deliberate effort to maintain confidentiality.

Third, Rudolph insists as a matter of law there can be no objectively reasonable expectation of confidentiality because the conversation occurred in a place that was open to the public. That contention is at odds with California authority viewing privacy as relative. *See, e.g.*, *Sanders v. Am. Broad. Cos., Inc.*, 20 Cal. 4th 907, 915–16 (1999). For instance, in *KCOP*, the reporter posing as a patient brought a companion into the examination room, and later argued the doctor could not expect his communications would be confidential because another person was present. *KCOP*, 110 Cal. App. 4th at 168. The court found "[t]he presence of others does not necessarily make an expectation of privacy objectively unreasonable, but presents a question of fact for the jury to resolve." *Id.* at 169. The court concluded a jury could find the doctor reasonably expected the communications were private, and thus affirmed the district court's denial of the defendants' anti-SLAPP motion to strike. *Id.* at 169–70. Likewise, here, if a jury credits the Whipple declaration, it could find Whipple's claimed expectation of privacy to be objectively reasonable. This possibility warrants denial of Rudolph's motion to strike.

Rudolph maintains this analysis is flawed, but the authority he invokes does not establish conversations in public locations categorically cannot be confidential.[7] In

---

[7] For example, in *Davis v. Los Angeles West Travelodge*, No. CV 08-8279 (CBM) (CTx), 2009 WL 4260406 (C.D. Cal. Oct. 8, 2009) (unpublished), the court examined (on a motion in limine) whether a

particular, he relies heavily on *Deteresa v. American Broadcasting Companies., Inc.*, 121 F.3d 460 (9th Cir. 1997), in which we affirmed a lower court's grant of summary judgment in favor of a defendant on claims for violation of section 632 and invasion of privacy. *Id.* at 465–66, 468. Applying the old *O'Laskey* standard (which the California Supreme Court has since overturned),[8] we held the

---

conversation between the plaintiff and a desk clerk in a hotel lobby was a confidential communication under section 632. *Id.* at *2. The court acknowledged the lobby was "public place," but proceeded to weigh the evidence, concluding "[g]iven the location of the communication and the nature of the conversation, the desk clerk could have no reasonable expectation that her conversation was not being overheard." *Id.* The *Davis* court limited this finding to the facts of the case. *Id.* In *Chamberlain v. Les Schwab Tire Center of California, Inc.*, No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103 (E.D. Cal. Dec. 3, 2012) (unpublished), the court examined (on a motion for sanctions) whether a conversation "in the tire bay, an open and public place," involved an objectively reasonable expectation of privacy. *Id.* at *3. The plaintiff presented evidence "employees were coming and going and they could readily overhear what was said," and the defendant, for its part, "provided no evidence to the contrary." *Id.* On that record, the court found neither party could reasonably expect the discussion would not be overheard. *Id.* Not only are these unpublished cases of only limited persuasive value, they are readily distinguishable. Here, unlike *Chamberlain*, the parties' competing evidence creates a question of fact as to whether or not service staff or other patrons could overhear the conversation between Whipple and Rudolph.

[8] Wilkins applied the *O'Laskey* standard of "confidential communications," which the California Supreme Court subsequently overruled. *See Wilkins*, 71 Cal. App. 4th at 1080. Under the *O'Laskey* test, a conversation is confidential only if the party has an objectively reasonable expectation the content will not later be divulged to third parties. *See O'Laskey v. Sortino*, 224 Cal. App. 3d 241, 248 (1990). The California Supreme Court rejected that standard in *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002), endorsing instead the test set forth in *Frio v. Superior Court*, 203 Cal. App. 3d 1480 (1988): "under section 632

plaintiff had no reasonable expectation of privacy in a conversation that occurred in public, with a person who openly identified himself as a reporter for ABC, where the reporter indicated that he wanted to speak with the plaintiff about appearing on a television show. *Id.* at 462, 465.

Even if we assume *Deteresa* remains good law after *Flanagan*, *see supra*, n.8, *Deteresa* would still not control here. Newsgathering is a quintessential function of a reporter; indeed, a reporter's very job is to *record* and disseminate facts and information about news-worthy events. Thus, the relationship (and concomitant expectation of privacy in information shared) with a reporter who shows up unannounced at one's doorstep is very different than the relationship between close friends. Because Whipple believed he was talking to Rudolph as a long-time friend, the critical fact supporting *Deteresa*'s result is absent here. Contrary to Rudolph's position, nothing about *Deteresa* supports a *per se* rule that one cannot have a reasonable expectation of privacy in a conversation just because it occurs in public.

Nor does *Wilkins v. National Broadcasting Company, Inc.*, 71 Cal. App. 4th 1066 (1999) support a *per se* rule. In that case, two reporters surreptitiously recorded a lunch meeting with two salesmen on "an outside patio table at a restaurant in Malibu." *Id.* at 1072. Far from holding that the public setting automatically negated any reasonable expectation of privacy, the court examined the facts surrounding the lunch at length. *Id.* at 1080. It observed the

---

'confidentiality' appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is 'listening in' or overhearing the conversation." *Id.* at 772–73.

reporters had brought two companions with them but the salesmen never inquired as to the identities of the strangers. *Id.* In addition, "[w]aiters frequently came to the table, but [the salesman] did not acknowledge them, pause in his sales pitch, or even lower his voice." *Id.* "On the facts of th[e] case," the court found the salesmen had no objectively reasonable expectation of privacy. *Id.* Here, by contrast, Whipple contends the conversation could not be overheard, because he and Rudolph lowered their voices overtly when others approached.

In short, even the cases cited by Rudolph demonstrate that whether a communication is confidential is a question of fact normally left to the fact finder. *See Shulman*, 18 Cal. 4th at 233–35; *see also Vera v. O'Keefe*, No. 10-cv-1422-L(MDD), 2012 WL 3263930, at *4 (S.D. Cal. Aug. 9, 2012) ("California courts have held that a reasonable expectation of privacy may be a question of fact for the jury to decide when either party has been recorded without his or her consent."); *Turnbull v. Am. Broad. Cos.*, No. CV 03-3554 SJO (FMOx), 2005 WL 6054964, at *6–7 (C.D. Cal. Mar. 7, 2005) (examining a jury's conclusion the plaintiffs did not have a reasonable expectation of privacy in a conversation that took place in a casting interview).

The take-home message is that privacy is relative and, depending on the circumstances, one can harbor an objectively reasonable expectation of privacy in a public location. Accordingly, the mere fact that Whipple's conversation took place in a public restaurant does not mean Whipple failed to advance a prima facie case for a violation of section 632.

Fourth, Rudolph contends there could be no objectively reasonable expectation of confidentiality given Whipple and Rudolph were adversaries in pending litigation. Not only does Rudolph offer no authority to support this proposition, the argument is unconvincing in any event. At the time of the conversation, Whipple thought Rudolph was a good friend. What is more, Rudolph lured Whipple to the conversation by saying "he had not wanted to sue" Whipple and did so only because the latter signed a letter as SCI president. Placed in that light, and combined with the allegation they stopped talking when other patrons approached, a reasonable jury could find Whipple had an objectively reasonable expectation of privacy in this circumstance.

In sum, mindful that a "[r]easonable probability in the anti-SLAPP statute [means] . . . only a minimum level of legal sufficiency and triability," *Graham-Sult*, 756 F.3d at 740, plaintiffs have met their burden at step two. The Whipple declaration makes out a prima facie case for a violation of section 632, and furnishes a basis sufficient for a jury to find in plaintiffs' favor on this claim.

### 2.  Negligence Per Se

Plaintiffs' next claim is for negligence per se, which requires showing: (1) a defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused injury; (3) the injury resulted from an occurrence the enactment was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute was intended to protect. *Ramirez*, 44 Cal. 4th at 917–18.

Plaintiffs aver Rudolph violated section 632 by making the surreptitious recording, the violation proximately caused

them injury, the injury is the kind the statute is designed to prevent, and they are persons the statute aims to protect. Rudolph responds only that the claim must fail because there is no plausible basis upon which a violation of section 632 can be established. In other words, Rudolph merely reiterates his prior argument.

Plaintiffs have met their step two burden as to the claim for negligence per se. They allege adequately and then subsequently support a violation of section 632. *See KCOP*, 110 Cal. App. 4th at 164 ("A section 632 violation is committed the moment a confidential communication is secretly recorded regardless of whether it is subsequently disclosed."). Both the FAC and Whipple's declaration aver the recording caused injury. Surreptitious recordings are the kinds of occurrences the statute was designed to prevent, and individuals who unknowingly have their conversations recorded are those the statute protects. As the district court found, plaintiffs have shown a probability of success on their negligence per se claim.

### 3.  Common Law Invasion of Privacy

The final claim—brought only by Whipple—is for common law invasion of privacy, which requires "(1) intrusion into a private place, conversation[,] or matter, (2) in a manner highly offensive to a reasonable person." *Shulman*, 18 Cal. 4th at 231.

As to the first element, "the defendant must have 'penetrated some zone of physical or sensory privacy . . . or obtained unwanted access to data' by electronic or other covert means, in violation of the law or social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)

(quoting *Shulman*, 18 Cal. 4th at 232). "[T]he expectation of privacy must be objectively reasonable." *Id.* (internal quotation marks omitted). "The second common law element essentially involves a 'policy' determination as to whether the alleged intrusion is 'highly offensive' under the particular circumstances." *Id.* (citation omitted). "Relevant factors include the degree and setting of the intrusion, and the intruder's motives and objectives." *Id.*

Here, Whipple adequately states and substantiates a claim for common law invasion of privacy. Whipple avers Rudolph's surreptitious recording of their lunchtime discussion intruded unlawfully into his private conversation. He maintains the occurrence was objectively offensive because Rudolph used friendship to lure him to lunch, then secretly recorded their conversation and shared it widely with members of the public. *Id.* The complaint adds Whipple suffered emotional distress, continues to be humiliated, and fears he will be shunned, avoided, and subjected to ridicule. *Id.* Though the question is close, we think plaintiffs' proffered evidence, taken as whole, could support a reasonable jury finding that Rudolph's actions constituted a "highly offensive" intrusion into Whipple's privacy. Whipple therefore meets his step two burden for common law invasion of privacy. Rudolph nonetheless takes aim at Whipple's evidence as to both prongs of this claim.

### a) Intrusion into a private conversation

Rudolph's opening shot once again is to say there is no objectively reasonable expectation of privacy when a conversation takes place in a location that is open to the public. However, as we have already discussed, courts have consistently rejected that assertion.

In *Sanders v. American Broadcast Companies*, for example, a reporter working undercover obtained employment alongside the plaintiff as a telepsychic, giving "readings" to customers over the phone. 20 Cal. 4th at 910. The reporter then secretly videotaped and recorded interactions with the plaintiff and other psychics using a small hidden camera. *Id.* The tapings occurred in a large room containing 100 cubicles that were open on one side, open on top, and from which coworkers could be seen and heard. *Id.* at 912. Visitors, however, could not enter this area without permission from the front desk. *Id.* Ultimately, the plaintiff sued the reporter for violating his privacy after one of his conversations aired on television. *Id.*

The court began its analysis by noting it has not stated "an expectation of privacy, in order to be reasonable for purposes of the intrusion tort, must be of *absolute* or *complete* privacy." *Id.* at 915. Indeed, "privacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic." *Id.* at 916. Rather, "[t]here are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." *Id.* In other words, "privacy . . . is relative," and "[t]he mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." *Id.* The court added "the reasonableness of a person's expectation of visual and aural privacy depends not only on who might have been able to observe the subject interaction, but on the identity of the claimed intruder and the means of intrusion." *Id.* at 923.

Applying that framework, the court found "an employee may, under some circumstances, have a reasonable expectation of visual or aural privacy against electronic intrusion by a stranger to the workplace, despite the possibility that the conversations and interactions at issue could be witnessed by coworkers." *Id.* at 918. As to the identity of the intruder, the court noted employees were misled to think the reporter was a colleague, and thus had no reason to suspect their conversations would be recorded for television. *Id.* at 921; *see also Hernandez*, 47 Cal. 4th at 289. Looking at the nature of the intrusion, it found "[t]he possibility of being overheard by coworkers does not, as a matter of law, render unreasonable an employee's expectation that his or her interactions within a nonpublic workplace will not be videotaped in secret by a journalist." *Sanders*, 20 Cal. 4th at 923. Distilling its holding, the court said the tort is not defeated "simply because the events or conversations upon which the defendant allegedly intruded were not completely private from all other eyes and ears." *Id.* at 911.

Rudolph is correct *Sanders* distinguished workplaces "regularly open to entry or observation by the public," and said "any expectation of privacy against press recording is less likely to be deemed reasonable" in those locations. *Id.* at 923; *see also Hernandez*, 47 Cal. 4th at 290 (noting workplaces open to the public occupy "one end of the spectrum"). The court did not, however, endorse a *per se* rule holding there is no objectively reasonable expectation of privacy when a conversation takes place in a location that is open to the public. Privacy expectations may be diminished in that scenario, but the court's analysis instructs emphatically that the inquiry requires a fact-based investigation of the precise circumstances. This holding is encapsulated in the pronouncement: "the fact that the privacy

one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." *Sanders*, 20 Cal. 4th at 916.

That *Sanders* did not endorse a *per se* rule is bolstered by the California Supreme Court's subsequent analysis in *Hernandez*.     There, the court examined the privacy expectations of two employees whose shared office their employer surreptitiously videotaped after hours.  47 Cal. 4th at 277.  It described its analytical framework as "consistent with *Sanders*, which asks whether the employee could be 'overheard or observed' by others when the tortious act allegedly occurred."  *Id.* at 290 (citation omitted).  Applying *Sanders*, the court examined "the physical layout of the area intruded upon, its relationship to the workplace as a whole, and the nature of the activities commonly performed in such places."  *Id*. at 290.  Again, it acknowledged public locations occupy one end of the privacy spectrum, but it continued to suggest the analysis requires a fact-based inquiry into the precise circumstances.  In sum, though there is daylight for Rudolph's argument, a *per se* rule would be at odds with the principles articulated by the California Supreme Court in this area.

The absence of a *per se* rule notwithstanding, the sufficiency of Whipple's allegations in light of *Sanders* must be addressed.  To start, the identity of the intruder weighs in Whipple's favor as Rudolph lured him to the lunchtime conversation, saying "he had not wanted to sue" him and did so only because Whipple signed a letter as SCI president. True, Whipple and Rudolph were adversaries in litigation, but Whipple still considered Rudolph to be a good friend, and thus had little reason to suspect his conversation might be recorded.  The nature and means of intrusion also weigh in

Whipple's favor because the parties sought overtly to keep the conversation quiet, yet Rudolph hoodwinked Whipple by recording it. All told, Whipple has offered evidence sufficient to establish a "probability" that a reasonable jury could agree he maintained an objectively reasonable expectation of privacy, and that Rudolph's recording invaded a confidential conversation under these particular circumstances.

### b) Highly Offensive

The next element requires the manner of intrusion be "highly offensive" to a reasonable person, and "sufficiently serious" and unwarranted as to constitute an "egregious breach of the social norms." *Hernandez*, 47 Cal. 4th at 295 (quotation marks and citation omitted). "Even in cases involving the use of photographic and electronic recording devices, which can raise difficult questions about covert surveillance, 'California tort law provides no bright line on ['offensiveness']; each case must be taken on its facts.'" *Id.* at 287 (quoting *Shulman*, 18 Cal. 4th at 237). Courts consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Wilkins*, 71 Cal. App. 4th at 1075–76 (quoting *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483–84 (1986)).

Rudolph maintains the surreptitious recording was not highly offensive because it took place in a public restaurant amongst adversaries in pending litigation. As Whipple freely discussed sensitive information about pending litigation between himself and Rudolph, Rudolph insists there was no

deception, and thus his conduct cannot possibly rise to the level of highly offensive.

To be sure, Rudolph's conduct seems less "offensive" than that committed in other cases involving surreptitious recordings, *see, e.g.*, *Dietemann v. Time, Inc.*, 449 F.2d 245, 247, 250 (9th Cir. 1971) (finding an invasion of privacy where the defendant gained entrance into another person's home by subterfuge and then recorded him); *Noble v. Sears, Roebuck & Co.*, 33 Cal. App. 3d 654, 659–60, 663 (1973) (reversing a lower court's dismissal of a cause of action for "unreasonably intrusive investigation" in violation of the right to privacy where a private investigator obtained entrance into a hospital room by deception and then recorded a patient); *Miller*, 187 Cal. App. 3d at 1484 (reversing a grant of summary judgment in favor of the defendant and reasoning that reasonable people could find that a news team's intrusion into the plaintiff's bedroom, without authorization, to film rescue attempt was highly offensive, given the plaintiff's vulnerable state), but a jury could still find the element is met notwithstanding the public nature of the restaurant. There is no doubt it is more offensive to be recorded while in an area with inherently elevated privacy (home, hospital room, bedroom), but the location, at bottom, simply is one factor incorporated into the analysis. Here, moreover, Whipple was misled into thinking Rudolph was a friend, then had his secretly recorded conversation disseminated widely on the Internet. Furthermore, as the district court noted, such conduct can warrant the imposition of criminal penalties, suggesting the California legislature, and perhaps an ordinary

person, would view it to be highly offensive.[9]  *See* Cal. Penal Code § 632(a) (providing for "imprisonment in the county jail not exceeding one year").  Mindful that Whipple need only show "minimal merit" for his claim, *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 279 (2006), if his evidence is credited, a reasonable jury could conclude Rudolph's conduct was highly offensive.  Whipple has met his burden at step two of the anti-SLAPP analysis.

## IV. CONCLUSION

In sum, the district court correctly denied Rudolph's anti-SLAPP motion to strike plaintiffs' claims for violation of California Penal Code section 632, negligence per se, and common law invasion of privacy.  Though Rudolph can show those claims arise from activity he took in furtherance of his right to free speech, plaintiffs can show a reasonable probability of prevailing on each of the challenged claims.  Accordingly, we affirm the district court's denial of Rudolph's motion to strike the above claims under California's anti-SLAPP statute.  We also deny Rudolph's corresponding request for an additional attorney fee award.

---

[9] Rudolph's contrary authority is plainly distinguishable.  In both *Wilkins*, 71 Cal. App. 4th at 1075–78, and *Deteresa*, 121 F.3d at 465–66, discussed *supra*, the court held that the plaintiff had no objectively reasonable expectation of privacy *as a matter of law.*  Thus, the plaintiff in both of those cases could not establish the first element of an invasion of privacy claim.  Conversely here, there is a question of fact as to whether Whipple had an objectively reasonable expectation of privacy in his conversation with Rudolph.

We remand for further proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.

**AFFIRMED.**