Filed 2/25/21  Balsamo v. Traughber CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DENNIS JAMES BALSAMO, | 2d Civ. No. B299926 |
| Plaintiff and Respondent, | (Super. Ct. No. 19CV01747) (Santa Barbara County) |
| v. | |
| BILLY GENE TRAUGHBER, et al., | |
| Defendants and Appellants. | |

Respondent Dennis James Balsamo and appellant Billy Gene Traughber are competing promotors of professional wrestling events in Santa Barbara and San Luis Obispo Counties.  Following a business dispute, Balsamo, who is also an attorney, filed a complaint for defamation against Traughber, his girlfriend, Kari Rockwood-Robinson aka Karen Leigh, and his mother, Cindy Bolding (collectively "appellants").  Balsamo alleges appellants referred to him as a "thief" and an "incompetent attorney" in Facebook postings and in

conversations and texts with members of the local wrestling community.

Appellants moved to strike Balsamo's complaint on the ground that it is a strategic lawsuit against public participation (SLAPP).  (Code Civ. Proc., § 425.16.)[1]  The trial court denied the anti-SLAPP motion because it was "not persuaded that this is a matter of public interest."  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Traughber is a professional wrestler.  In 2009, he began promoting local wrestling events under the name Vendetta Pro Wrestling (VPW).  Traughber did not register VPW as a fictitious business name or formally organize it as a business entity.

Traughber had a group of wrestlers who regularly worked his events.  In 2014, he had a falling out with some of the wrestlers, who decided to start a rival wrestling promotion company called Cen-Cal Professional Wrestling & Entertainment, Inc. (Cen-Cal).  The wrestlers, which included Balsamo's son Dominick Balsamo (Dominick), retained Balsamo's firm to incorporate Cen-Cal.  The new corporation initially had five directors.  Balsamo served as a shareholder, officer and director.

The friction between VPW and Cen-Cal was immediate. Traughber told wrestlers they could no longer work for him if they wrestled for Cen-Cal.  Cen-Cal responded by registering "Vendetta Pro Wrestling" as its fictitious business name and informing Traughber he no longer had the legal right to use the VPW name.

---

[1] All statutory references are to the Code of Civil Procedure.

2

The parties temporarily called a truce and worked together on several joint shows. The events were promoted as "VPW vs. Cen-Cal." According to Traughber, Balsamo had agreed to return the VPW name to him. When that did not occur, Dominick assured Traughber it had been transferred and said he would follow up with his father.

Balsamo and Traughber had another falling out over Cen-Cal's use of a venue VPW regularly used. After Traughber complained, Balsamo sent Traughber a cease-and-desist letter and advised the venue that Traughber had no right to the VPW name. Balsamo threatened the venue with legal action if they allowed Traughber's show to proceed.

Balsamo provided Traughber with a proposed written agreement that would return the VPW name to him if certain conditions were met over a nine-month period. Traughber refused to sign the agreement. He believed he "would be giving [Balsamo] the right to take away from me what I already owned."

Balsamo sent cease-and-desist letters to Traughber, his venues and sponsors demanding that they stop using the VPW name. According to Balsamo, Traughber announced on a public Facebook forum that Balsamo "had stolen my trademark and I may have to discontinue the use of the VPW name." Balsamo also claims Bolding and Robinson made similar comments on Facebook. Cen-Cal subsequently incorporated VPW as a limited liability company.

Balsamo's complaint alleges "that since January 2019, Traughber has repeatedly made many false and defamatory statements to third parties, including fans and members of the professional wrestling community, that (1.) Plaintiff [Balsamo] had stolen from him, specifically the intellectual property known

3

as VPW; and (2.) casting unsubstantiated defamation regarding Plaintiff's abilities and talents as an attorney." The complaint makes the same general allegations as to Robinson and Bolding.

In their anti-SLAPP motion, appellants claimed they wanted "people in the Central California and larger wrestling community to be aware of the fact that . . . Balsamo had registered Mr. Traughber's company name, Vendetta Pro Wrestling, and was interfering with Mr. Traughber's ability to use his name, which [he] had owned and used in the professional wrestling scene since 2009." Appellants also declared that any statement made about Balsamo "as an attorney was in regards to [their] opinion that a lawyer who would knowingly steal the business name from another person they were competing with is a despicable person."

Balsamo opposed the anti-SLAPP motion, arguing his claims do not arise from a matter of public interest and that even if they did, he has satisfied his burden of showing "minimal merit" to his claims. He maintains any complaints by appellants should be directed to Cen-Cal and not to him personally. The trial court denied the motion, concluding the matter is not of public interest.

## DISCUSSION

### *Anti-SLAPP Principles and*
### *Standard of Review*

The anti-SLAPP statute "authorizes defendants to file a special motion to strike '[a] cause of action against a person arising from' the petition or speech activities 'of that person . . . in connection with a public issue.' ( . . . § 425.16, subd. (b)(1).)" (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.) Such activities include writings made "in a place open to the public or

4

[in] a public forum in connection with an issue of public interest" (§ 425.16, subd. (e)(3)) and "conduct in furtherance of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e)(4).)

Resolution of an anti-SLAPP motion involves a two-prong analysis. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

"'We review de novo a ruling on a special motion to strike under section 425.16. [Citation.] Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim.'" (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 657.) The appellant still bears the "'burden of affirmatively demonstrating error.'" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.)

*The Trial Court Properly Denied the Anti-SLAPP Motion*

Appellants bear the burden of demonstrating that the alleged defamatory statements concern an issue of public interest. (§ 425.16, subd. (e)(4); *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116.) "The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a government entity." (*Damon v. Ocean Hills Journalism*

*Club* (2000) 85 Cal.App.4th 468, 479; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650-651, overruled on another ground as stated in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 63, fn. 5.)  The parties agree this matter involves private conduct but disagree as to whether it impacts a broad segment of society.

Appellants' burden is complicated by Balsamo's failure to state a claim for defamation, which must be pled with particularity, i.e., each allegedly defamatory statement "must be specifically identified, if not pleaded verbatim, in the complaint." (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1612, fn. 5; *Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1017, fn. 3.)  The complaint broadly alleges that since January 2019, appellants have "repeatedly made many false and defamatory statements to third parties, including fans and members of the professional wrestling community," that Balsamo is an incompetent attorney and that he stole VPW from Traughber.  Appellants acknowledge they "are still guessing as to which statements [Balsamo] is complaining of . . . ."  (Emphasis omitted.)

Our task also is more difficult because the identity of the speaker, the identity of the audience and the statement's intended purpose are "relevant . . . in analyzing whether the statement was made 'in furtherance of' free speech 'in connection with' a public issue" within the meaning of section 425.16, subdivision (e)(4).  (*FilmOn.com Inc v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 140, 151-152 ["[T]he inquiry of whether a statement contributes to the public debate is one a court can hardly undertake without incorporating considerations of context"].)  That information is not present here.

Nonetheless, Balsamo's failure to state a viable claim for relief does not impact our anti-SLAPP analysis. We must look beyond the complaint and decide, based on the evidence presented in the motion and opposition, whether Balsamo's claims are based on protected speech or conduct. (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679.)

Appellants' motion relies on some seemingly random Facebook posts (Exhibit 8) and two articles appearing on the SoCalUncensored.com and LuchaCentral.com websites. The SoCalUncensored.com article (Exhibit 6) was posted by Steve Bryant on November 1, 2018, and reiterates, in part, Dominick's view of the parties' dispute. That view appeared in an earlier undated post on Dominick's Facebook page (Exhibit 3).

The LuchaCentral.com article, entitled "LUCHA CENTRAL EXCLUSIVE: THE FIGHT FOR VENDETTA PRO WRESTLING (UPDATED!)" (Exhibit 7) was posted by Eric Mutter on May 1, 2019, after this lawsuit was filed. The article discusses the parties' dispute and litigation. It also includes Balsamo's and Dominick's responses to Mutter's original article. Traughber declined to comment.

Exhibit 8 includes an undated post from Balsamo on Traughber's Facebook page, which states: "Best carnie show in town!! Although is it nice to make money off of another person's disability? But when you want [to] see real wrestling . . . check out Cen Cal Pro Wrestling or Planet Luca (owner of Vendetta Pro Wrestling)." The exhibit, which appears to be heavily edited, includes 22 undated Facebook comments that Traughber asserts are samples of the public discourse in response to his post claiming that Balsamo had stolen the VPW name. Not only does the exhibit omit that post, but it also is unclear whether

Traughber's Facebook page is accessible to the general public or only to his "friends."

Although the posting of the two articles suggests some public interest in the parties' dispute, there is no information regarding the viewership for either website. Appellants also have not attempted to quantify the level of public interest in the local wrestling community. Courts typically require such information. (See *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 481-483 [allegedly libelous Internet postings of interest to a church community of 550 to 1,000 members was "large enough to qualify as a 'community' for purposes of section 425.16"]; *Third Laguna Hills Mutual v. Joslin* (2020) 49 Cal.App.5th 366, 376 [cross-complaint challenging homeowner association's enforcement of its covenants and restrictions against a homeowner did not involve a public issue affecting all 6,102 members and residents]; *Safari Club International v. Rudolph* (9th Cir. 2017) 862 F.3d 1113, 1122 [surreptitious recording of president of wildlife conservation organization "implicates public issues because it involved two presidents of an organization with 50,000 members"]; see also *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 734 [issue of responsibility for payment of repairs was of interest to only a narrow sliver of society and thus was not a public issue]; *Jeppson v. Ley* (2020) 44 Cal.App.5th 845, 856 ["There is no issue of public interest when the speaker's words are merely an effort to gather ammunition for another round in the speaker's neighborhood wrangle"].)

In sum, we cannot conclude on this record that the statements attributed to appellants are a matter of public interest. The trial court appropriately denied the anti-SLAPP motion.

## DISPOSITION

The judgment is affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED.</u>



PERREN, J.

We concur:


GILBERT, P. J.


TANGEMAN, J.

Jed Beebe, Judge
Superior Court County of Santa Barbara

_____


Dennis James Balsamo, in pro. per., for Plaintiff and Respondent.

Anthony A. Karian, for Defendants and Appellants.