# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MINDYS COSMETICS, INC., a
California corporation,
            *Plaintiff-Appellee,*

            v.

SONYA DAKAR, an individual;
DONNA DAKAR, an individual,
AKA Daniella Dakar,
            *Defendants,*

            and

KIA KAMRAN, an individual,
            *Defendant-Appellant.*

No. 09-55134

D.C. No.
2:08-cv-04459-
SVW-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
March 5, 2010—Pasadena, California

Filed July 6, 2010

Before: William C. Canby, Jr. and William A. Fletcher,
Circuit Judges, and John R. Tunheim,* District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable John R. Tunheim, United States District Judge for the
District of Minnesota, sitting by designation.

**COUNSEL**

Al Mohajerian, Michael Thomas Smith, MOHAJERIAN LAW CORPORATION, Los Angeles, California, for the appellee.

William K. Mills, Justin Davis Denlinger, PARKER SHU-MAKER MILLS, LLP, Los Angeles, California, for the appellant.

---

**OPINION**

W. FLETCHER, Circuit Judge:

Plaintiff-appellee Mindys Cosmetics, Inc. ("Mindys") is a cosmetics company owned and operated by members of the Dakar family. Defendant-appellant Kia Kamran ("Kamran") is an attorney. In 2007, Kamran registered two of Mindys' trademarks in Sonya Dakar's name. Israel and Natan Dakar brought suit in the name of Mindys against Sonya Dakar, Donna Dakar, and Kamran. Kamran moved under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, to strike the claims against him. The district court denied the motion. Kamran brings an interlocutory appeal of the district court's denial. We affirm.

## I.   Background

This case arises from a dispute among members of the Dakar family over ownership of two trademarks: the "Sonya Dakar" mark and "The Problem Skin Specialists" mark. The family conflict pits Israel Dakar and his son Natan against Israel's wife Sonya Dakar, their son Yigal, and their daughters Daniella ("Donna") and Michal ("Mimi").

According to Israel Dakar, he and Natan founded Mindys Cosmetics in 1994 and have managed the company since

1999. In 2000 and 2001, Mindys registered the two trademarks at issue, listing Donna Dakar as the owner of the marks. In 2006, Yigal Dakar retained Kamran for a variety of services "on behalf of the family business." Kamran was not involved in the 2000 trademark registration. In 2007, Kamran noticed that the "Sonya Dakar" mark had expired. Yigal, Donna, and Mimi instructed Kamran to consult Sonya about the registration. Sonya instructed Kamran to register both marks in her name, which Kamran did.

In 2008, Israel and Natan brought suit on behalf of Mindys against Sonya and Donna (the "Dakar Defendants") and Kamran. The complaint alleged trademark infringement by Sonya Dakar, legal malpractice and breach of fiduciary duty by Kamran, and fraudulent concealment and conversion by Kamran and the Dakar Defendants. Kamran moved under California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16, to strike the claims against him. The district court denied Kamran's motion. It held that Mindys' suit against Kamran did not arise from protected conduct under the anti-SLAPP statute and that, even if it did, Mindys had demonstrated a probability of prevailing on the merits of its claims.

## II.   Jurisdiction and Standard of Review

We have jurisdiction to review the district court's denial of Kamran's anti-SLAPP motion under the collateral order doctrine. *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 (9th Cir. 2010); *Batzel v. Smith*, 333 F.3d 1018, 1024-26 (9th Cir. 2003). We review *de novo* a district court's denial of a motion to strike under California's anti-SLAPP statute. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *see also Flatley v. Mauro*, 39 Cal. 4th 299, 326 (2006).

## III.   Discussion

[1] Kamran contends that Mindys' suit against him is a Strategic Lawsuit Against Public Participation ("SLAPP")

within the meaning of California's anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16. California enacted the anti-SLAPP statute "in response to the legislature's concern about civil actions aimed at private citizens to deter or punish them for exercising their political or legal rights." *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970 (9th Cir. 1999). The statute was designed to allow courts "to promptly expose and dismiss meritless and harassing claims seeking to chill protected expression." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). The statute provides that a party may file a motion to strike a cause of action against it if the complaint "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). The statute is to be "construed broadly." *Id.* § 425.16(a); *Vess*, 317 F.3d at 1109.

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess*, 317 F.3d at 1110. First, the defendant must make a prima facie showing that the plaintiff's suit "arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.* (internal quotation marks omitted). "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.* (internal quotation marks omitted). The defendant bringing a motion to strike "need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech" or "that any speech was actually chilled." *Id.*

We hold that Kamran has made a prima facie showing that the suit against him "arises from" a protected act under the anti-SLAPP statute. However, Mindys has made a sufficient showing under the second part of the inquiry to withstand Kamran's motion to strike under the anti-SLAPP statute. We

therefore affirm the district court's denial of Kamran's motion to strike.

### A. Prima Facie Showing of a Protected Act

Defendant Kamran bears the burden of demonstrating that Mindys' suit against him arises from a protected act. *Vess*, 317 F.3d at 1110.

**[2]** An "act in furtherance of a person's right of petition or free speech" includes:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;

(4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e). Kamran contends that filing a trademark application with the United States Patent and Trademark Office ("USPTO") constitutes a protected act under categories (1) and (2). The district court did not determine whether this act constituted a protected act because it concluded that the suit did not "arise from" the filings even if they were protected. While it is a close question, we follow

the California legislature's direction that the anti-SLAPP statute be "construed broadly," *id.* § 425.16(a), and hold that Kamran's act of filing the trademark applications with the USPTO was a protected act within the meaning of the statute.

### 1. Protected Act

**[3]** The filing of a trademark application is a formal communication to the USPTO seeking official action in a process governed by statute. *See* 15 U.S.C. § 1051 ("Application for registration; verification"). We conclude that the application is protected by the anti-SLAPP statute as a "writing made before . . . [an] executive [or] . . . other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e)(1). The application may also be a "writing made in connection with an issue under consideration . . . by . . . [an] executive . . . body, or any other official proceeding." *Id.* § 425.16(e)(2).

California appellate courts interpreting the anti-SLAPP statute have distinguished between communications made in the course of "official" proceedings, which are protected, and mere "ministerial" business communications, which are not. For example, in *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1009 (2001), the court of appeal found that filing a complaint with the SEC that was designed to solicit an investigation "qualified at least as a statement before an official proceeding" under § 425.16(e)(1). "[C]ommunication to an official administrative agency . . . designed to prompt action by that agency is as much a part of the 'official proceeding' as a communication made after the proceeding had commenced." *Id.* (internal citations and some quotation marks omitted). In *Kibler v. Northern Inyo County Local Hospital District*, 39 Cal. 4th 192, 199 (2006), the California Supreme Court held that "a hospital's peer review procedure qualifies as an 'official proceeding authorized by law' . . . because that procedure is required under [California] Business and Professions Code section 805 et seq., governing hospital peer review proceedings." In *Braun v. Chronicle Publishing Co.*, 52 Cal.

App. 4th 1036, 1049 (1997), the court of appeal similarly concluded that an investigative audit conducted by a state auditor was "an authorized, public proceeding because it is government-sponsored and provided for by statute."

In contrast, California appellate courts have held that "ministerial" acts involving primarily private transactions are not protected acts. For example, in *Blackburn v. Brady*, 116 Cal. App. 4th 670, 677 (2004), the court of appeal rejected the contention that statements made in connection with a Sheriff's auction could amount to protected speech under the anti-SLAPP law. "The ministerial event of a Sheriff's sale or auction simply does not concern an issue under review or determine some disputed matter as contemplated under the anti-SLAPP law." *Id.* It was a mere "business dealing or transaction." *Id.*; *see also Kajima Eng'g & Constr., Inc. v. City of Los Angeles*, 95 Cal. App. 4th 921, 932 (2002) ("The submission of contractual claims for payment in the regular course of business before the commencement of litigation simply is not an act in furtherance of the right of petition or free speech within the meaning of the anti-SLAPP statute.") (citing *People ex rel. 20th Century Ins. Co. v. Bldg. Permit Consultants, Inc.*, 86 Cal. App. 4th 280, 285 (2000); *Ericsson GE Mobile Commc'ns, Inc. v. C.S.I. Telecomms. Eng'rs*, 49 Cal. App. 4th 1591, 1601-02 (1996)).

**[4]** Filing a trademark application is more than merely a ministerial act connected with a business transaction. It is an attempt to establish a property right under a comprehensive federal statutory scheme. *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 305 (9th Cir. 1992); 15 U.S.C. § 1072 (registering a trademark provides "constructive notice of the registrant's claim of ownership thereof"). The filing party seeks a determination by USPTO examiners that it is the presumptive owner of a protectable mark. *See, e.g.*, *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) ("Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie

evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration." (internal alterations and quotation marks omitted)); *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005) ("Federal registration of a mark constitutes *prima facie* evidence of the validity of the mark."). We therefore conclude that such a filing is a protected act under the anti-SLAPP statute.

## 2. "Arising From" a Protected Act

Kamran must also demonstrate that the suit against him "arises from" his protected act of filing a trademark application. "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002); *see also City of Cotati v. Cashman*, 29 Cal. 4th 69, 76-77 (2002) ("[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity.").

The district court relied on two California court of appeal cases in which the court concluded that attorney malpractice claims do not arise from a protected act. *See Benasra v. Mitchell Silberberg & Knupp LLP*, 123 Cal. App. 4th 1179 (2004); *Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal. App. 4th 1532 (2006). It is true that in several cases involving attorney malpractice claims, courts of appeal have concluded that the alleged malpractice does not arise from a protected act under the anti-SLAPP statute. *See PrediWave Corp. v. Simpson Thacher & Bartlett LLP*, 179 Cal. App. 4th 1204, 1221-26 (2009 ) (describing cases). For example, in *Benasra*, the court determined that the anti-SLAPP statute did not apply to a former client's suit against a law firm for breach of loyalty. The court reasoned that "[t]he breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it." *Benasra*, 123 Cal. App. 4th

at 1189. In *Jespersen v. Zubiate-Beauchamp*, 114 Cal. App. 4th 624 (2003), the court held that the malpractice action fell outside of the anti-SLAPP statute when it alleged the attorneys' failure to respond to discovery requests and to comply with court orders. In *Kolar*, the court explained, "In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so." 145 Cal. App. 4th at 1540.

**[5]** However, there is no categorical exclusion of claims of attorney malpractice from the anti-SLAPP statute. The California Supreme Court has observed that "[n]othing in the statute itself categorically excludes any particular type of action from its operation." *Navellier*, 29 Cal. 4th at 92. "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Id.*

**[6]** Each of Mindys' causes of action arises not out of a general breach of duty, but out of Kamran's act of filing the trademark application in Sonya's name. The trademark application was not "incidental" to the causes of action, *see Freeman v. Schack*, 154 Cal. App. 4th 719, 732 (2007), but was their gravamen, *see Cotati*, 29 Cal. 4th at 79. But for the trademark application, Mindys would have no reason to sue Kamran. Because Mindys' claims arose from Kamran's act of applying to register the trademarks in Sonya's name, they are properly subject to an anti-SLAPP motion.

### B. Probability of Success on the Merits

#### 1. Legal Standard

At the second step of the anti-SLAPP inquiry, the burden shifts to Mindys to show a probability of success. *Navellier*, 29 Cal. 4th at 95. To satisfy this second prong, the plaintiff

"must show a 'reasonable probability' of prevailing in its claims for those claims to survive dismissal." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). The court is to consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2).

"Reasonable probability" in the anti-SLAPP statute has a specialized meaning. The statute requires only a "minimum level of legal sufficiency and triability." *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 438 n.5 (2000). Indeed, the second step of the anti-SLAPP inquiry is often called the "minimal merit" prong. *See Peregrine Funding, Inc. v. Sheppard Mullin Rickter & Hampton LLP*, 133 Cal. App. 4th 658, 675 (2005) (quoting *Navellier*, 29 Cal. 4th at 95 n.11); *Navellier*, 29 Cal. 4th at 93 ("[T]he statute poses no obstacle to suits that possess minimal merit."). To establish "minimal merit," the plaintiff need only "state and substantiate a legally sufficient claim." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 746 (2003); *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 105 (2004) ("A plaintiff is not required to prove the specified claim to the trial court; rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim.") (internal quotation marks omitted). "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (internal quotation marks omitted).

While a court's evaluation of a claim under the anti-SLAPP statute has been called a "summary-judgment-like procedure," *see Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 278 (2006), a motion to strike does not impose an initial burden of production on the moving defendant. *Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal. App.

4th 1219, 1238-40 (2003). The applicable burden "is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff." *Metabolife Int'l*, 264 F.3d at 840 (internal quotations omitted). The court "does not weigh the credibility or comparative probative strength of competing evidence," but "should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Wilson*, 28 Cal. 4th at 821; *see also Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 828 (1994), *overruled on other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002) (citing *Carson v. Facilities Dev. Co.*, 36 Cal. 3d 830, 838-39 (1984)); *Coll. Hosp. Inc. v. Superior Court*, 8 Cal. 4th 704, 718 (1994) ("[T]he motion required by [the statute] operates like a demurrer or motion for summary judgment in 'reverse,' . . . [requiring] the plaintiff to demonstrate that he possesses a legally sufficient claim which is substantiated, that is, supported by competent, admissible evidence.") (some internal quotation marks omitted).

## 2. Application

**[7]** As a preliminary matter, we note that under California law, Kamran cannot use the litigation privilege to defend against Mindys' claims. *See* Cal. Civ. Code § 47(b). The litigation privilege "grants absolute immunity from tort liability for communications made in relation to judicial proceedings." *Jarrow Formulas*, 31 Cal. 4th at 737. "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). Although § 47(b) encompasses "official proceedings," it is not coextensive with the anti-SLAPP statute. *See Kibler*, 39 Cal. 4th at 201-02 ("The [§ 47(b)] privilege is a

substantive rule of law, whereas the anti-SLAPP statute is a procedural device to screen out meritless claims.").

**[8]** The trademark registration application was not filed in anticipation of litigation, nor was it intended to instigate official investigation into wrongdoing. *See Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 369 (2004). Further, California courts of appeal have concluded that the litigation privilege does not protect an attorney from a suit by a former client because if it did, "no malpractice suit could be brought." *See Kolar*, 145 Cal. App. 4th at 1541; *Mattco Forge, Inc. v. Arthur Young & Co.*, 5 Cal. App. 4th 392, 407 (1992).

### a.    Malpractice and Breach of Fiduciary Duty Claims

Mindys alleges that Kamran committed malpractice and breached his fiduciary duty by representing Mindys and Sonya Dakar simultaneously. Mindys alleges that Kamran failed to protect Israel and Natan's ownership interests when he registered the trademarks in Sonya's name and that Kamran has refused to turn over the client file to Israel and Natan.

**[9]** Mindys has made a sufficient prima facie showing of facts supporting its claims for malpractice and breach of fiduciary duty to withstand a motion to strike under the anti-SLAPP statute. Kamran contends that he represented only Mindys at all relevant times, but if Mindys' evidence is credited Kamran was at least negligent in determining who had authority to act on behalf of Mindys. Kamran admits that he took instructions to register the trademarks from Yigal, Donna, Mimi, and Sonya. Israel states in his declaration that Sonya was never a shareholder of Mindys and Kamran never inquired whether Yigal, Donna, or Mimi, who were shareholders, had actual authority to act on behalf of the company. Mindys also introduced evidence that in January 2002, Yigal assigned away his shares in Mindys, and thus as of that time he was only an employee of the company. If this is true, Yigal had no authority to give instructions to Kamran on behalf of

Mindys. Moreover, according to Israel and Natan, Donna and Mimi were minority shareholders and therefore had no authority to take action on behalf of Mindys without Israel or Natan's approval. Mindys has thus made at least a minimal showing that Kamran did not "use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Lucas v. Hamm*, 56 Cal. 2d 583, 591 (1961). Crediting the evidence submitted by Mindys, as we are required to do, Mindys has demonstrated a "reasonable probability," within the meaning of the anti-SLAPP statute, of prevailing on its malpractice and breach of fiduciary duty claims.

> b.    Fraudulent Concealment and Conversion Claims

**[10]** Mindys alleges claims of fraudulent concealment and conversion based on its contention that the registration of the trademarks in Sonya's name deprived Mindys of its "lawful ownership interests in the subject trademarks." Mindys has made a sufficient prima facie showing of facts supporting both claims to withstand an anti-SLAPP motion to strike.

When there is a fiduciary relationship between two parties, "any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action." *Ford v. Shearson Lehman Am. Express, Inc.*, 180 Cal. App. 3d 1011, 1020 (1986). Natan states in his declaration that Kamran "never advised Mindys Cosmetics, Inc. of the legal consequences to Mindys Cosmetics' intellectual property rights that the [trademark registrations] were about to expire or be transferred to Sonya Dakar." Kamran contends that he emailed Natan about the trademark registration, but at this phase we must credit the evidence submitted by Mindys. Although the tort of fraudulent concealment usually requires a showing of intent to defraud, *see, e.g.*, *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009), Mindys' claim is grounded, at least in part, on constructive fraud. An action for constructive fraud does not require a

showing of intent to defraud. *See, e.g.*, *Quintilliani v. Man-nerino*, 62 Cal. App. 4th 54, 70 (1998).

"Conversion is the wrongful exercise of dominion over the property of another." *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 543 (Cal. Ct. App. 1996). The elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.* at 543-44. It is necessary to show that the alleged converter has assumed control over the property "or that the alleged converter has applied the property to his own use." *Id.* When Kamran registered Sonya Dakar as the owner of the trademarks, she began requesting license fees from the company.

**[11]** If Sonya did not have an ownership right over the trademark, as Israel and Natan contend, Kamran may have caused a wrongful appropriation of trademark rights held by Mindys.

> [A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion. . . . Where the conversion is the result of the acts of several persons, which, though separately committed, all tend to the same end, there is a joint conversion. . . . If the principal is a wrong-doer, the agent is a wrong-doer also.

*McCafferty v. Gilbank*, 249 Cal. App. 2d 569, 576 (Cal. Ct. App. 1967) (internal quotation marks omitted). Although it is a close question, we hold that, under a generous interpretation of the alleged facts, there is a reasonable probability that Kamran was an agent of Sonya such that he, along with Sonya, could be held liable for conversion.

Conclusion

For the foregoing reasons, we affirm the district court's denial of Kamran's anti-SLAPP motion to strike Mindys' claims for malpractice, breach of fiduciary duty, fraudulent concealment, and conversion.

AFFIRMED.