**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DOUGLAS JORDAN-BENEL, an individual,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>UNIVERSAL CITY STUDIOS, INC., a Delaware corporation; BLUMHOUSE PRODUCTIONS, LLC, a Delaware Limited Liability Company; OVERLORD PRODUCTIONS, LLC, a California Limited Liability Company; PLATINUM DUNES PRODUCTIONS, a California Corporation; WHY NOT PRODUCTIONS, INC., DBA Why Not Films, a Nevada Corporation; JAMES DEMONACO, an individual,<br>        *Defendants-Appellants*,<br><br>and<br><br>UNITED TALENT AGENCY, INC., a California corporation,<br>        *Defendant*. | No. 15-56045<br><br>D.C. No.<br>2:14-cv-05577-<br>MWF-MRW<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted December 5, 2016
Pasadena, California

Filed June 20, 2017

Before:  Harry Pregerson, Dorothy W. Nelson,
and John B. Owens, Circuit Judges.

Opinion by Judge Pregerson

## SUMMARY[*]

### Anti-SLAPP Motion

The panel affirmed the district court's order denying defendants' anti-SLAPP motion to strike a state law claim for breach of implied-in-fact contract in a copyright case.

The plaintiff alleged that the defendants infringed his copyright in a screenplay and used his screenplay idea to create films without providing him compensation as a writer. The panel held that the breach of contract claim did not arise from an act in furtherance of the right of free speech because the claim was based on defendants' failure to pay for the use of plaintiff's idea, not the creation, production, distribution, or content of the films.  Accordingly, the district court did not err in denying defendants' motion to strike the state law claim under California's anti-SLAPP statute.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kelli L. Sager (argued), Jason Harrow, and Karen A. Henry, Davis Wright Tremaine LLP, Los Angeles, California, for Defendants-Appellants.

Glen Lance Kulik (argued) and Patricia Brum, Kulik Gottesman Siegel & Ware LLP, Sherman Oaks, California, for Plaintiff-Appellee.

---

**OPINION**

PREGERSON, Circuit Judge:

This case is about the alleged theft of a screenplay idea that was later turned into a popular film series called *The Purge*. Plaintiff-Appellee Douglas Jordan-Benel brings copyright and state law claims, including breach of implied-in-fact contract and declaratory relief, against several defendants in the film industry. He alleges that the defendants used his screenplay idea to create *The Purge* films without providing him compensation or credit as a writer.

Several defendants filed an anti-SLAPP motion to strike Jordan-Benel's state law claims. After dismissing the cause of action for declaratory relief on other grounds, the district court denied the anti-SLAPP motion. It ruled that Jordan-Benel's breach of contract claim does not arise from an act in furtherance of the right of free speech because the claim is based on Defendants' failure to pay for the use of Jordan-Benel's idea, not the creation, production, distribution, or content of the films. We affirm.

## I. FACTUAL BACKGROUND[1]

Plaintiff-Appellee Douglas Jordan-Benel writes screenplays, teleplays, and comic books. Around January 2011, Jordan-Benel wrote a screenplay entitled *Settler's Day* about a family's attempt to survive an annual, state-sanctioned, 24-hour period in which citizens are allowed to commit any crime without legal consequences. He registered the screenplay with the Writers Guild of America and the U.S. Copyright Office.

Around June 2011, Jordan-Benel's manager, Adam Peck, emailed David Kramer, Managing Director of Feature Productions at United Talent Agency ("UTA"), about *Settler's Day*. Kramer responded that Peck should contact Emerson Davis at UTA to discuss the screenplay. Peck then spoke with Davis and asked permission to submit the screenplay. Davis agreed and asked that Peck email the screenplay to both Davis and Kramer. On July 8, 2011, Peck submitted the screenplay.

Based on custom and practice in the industry and prior dealings between UTA and Peck, UTA understood that the submission was not gratuitous and was made for the purpose of selling the screenplay to a UTA client. Around July 13, 2011, Davis emailed Peck to confirm that he had read the screenplay but that he was going to "pass." Nonetheless, someone at UTA sent the screenplay to UTA client James DeMonaco. DeMonaco and his partner, Sebastian Lemercier (also a UTA client), wrote a script entitled *The*

---

[1] The facts recited here are as alleged in Jordan-Benel's Second Amended Complaint.

*Purge*, which allegedly copies Jordan-Benel's ideas from *Settler's Day*.

Around June 7, 2013, a film entitled *The Purge* was released. The film was produced by Universal City Studios, LLC, Blumhouse Productions LLC, Overlord Productions LLC, Platinum Dunes Productions, and Lemercier's company, Why Not Productions, Inc. (collectively, "Production Defendants"). A sequel was released on July 18, 2014 and a third film was planned for release. UTA packaged the film and its sequels.

## II. PROCEDURAL HISTORY

On February 27, 2015, Jordan-Benel filed the operative complaint in this action. He alleged copyright infringement against UTA and the Production Defendants. He asserted a state law cause of action for breach of implied-in-fact contract against UTA, DeMonaco, and Why Not Productions based on his submission of his script, which led to *The Purge*. He also asserted a cause of action for declaratory relief against DeMonaco and the Production Defendants, seeking a determination and declaration of his rights to credit and payment for the production and sale of *The Purge*.

On March 13, 2015, DeMonaco and the Production Defendants (collectively, "Defendants") filed an anti-SLAPP motion to strike the state law claims on grounds that they arise from the exercise of Defendants' right of free speech. After briefing and argument, the district court issued an order denying the motion. The district court ruled that Defendants failed to show that Jordan-Benel's breach of contract claim arises from an act in furtherance of Defendants' rights of petition or free speech because the claim is based on the failure to pay for the use of Jordan

Benel's idea, not the creation, production, distribution, or content of the films.[2]  Because the district court held that anti-SLAPP does not apply, the district court did not address whether Jordan-Benel met his burden of establishing a probability of prevailing on the claim.

Defendants timely appealed the district court's denial of their anti-SLAPP motion to strike.

## III. JURISDICTION AND STANDARD OF REVIEW

A district court's denial of an anti-SLAPP motion is appealable under the collateral order doctrine and is reviewed de novo.  *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015–16 (9th Cir. 2013); *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 951 (9th Cir. 2013).

## IV. DISCUSSION

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

---

[2] In the same order in which the district court ruled on the anti-SLAPP motion, it also ruled on a separate motion to strike and dismissed with prejudice Jordan-Benel's cause of action for declaratory relief.

Cal. Civ. Proc. Code § 425.16(b)(1). The purpose of the anti-SLAPP statute is to deter lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." Cal. Civ. Proc. Code § 425.16(a); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001) (explaining that the anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation"); *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094, 1098 (Cal. 2008) (stating that the anti-SLAPP statute provides for the "early dismissal of unmeritorious claims" that "interfere with the valid exercise of the constitutional rights of freedom of speech and petition").

To prevail on an anti-SLAPP motion to strike, the defendant must first make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). An "act in furtherance" includes, among other things, "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4). If the defendant makes the required showing, the plaintiff must then demonstrate a probability of prevailing on the challenged claim. *Mindys Cosmetics, Inc.*, 611 F.3d at 595. If the plaintiff cannot meet the minimal burden of "stat[ing] and substantiat[ing] a legally sufficient claim," the claim is stricken pursuant to the statute. *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002).

Defendants contend that Jordan-Benel's claims arise from the creation, production, distribution, and content of expressive works (*The Purge* films) and that such conduct

falls squarely within the ambit of anti-SLAPP.  Jordan-Benel argues, and the district court held, that although *The Purge* films relate to Jordan-Benel's breach of implied-in-fact contract claim, it is Defendants' failure to pay that gives rise to the claim, and the failure to pay is not an act in furtherance of free speech, so anti-SLAPP does not apply.  We agree.

## A.  The Claim at Issue

At the outset, it is important to determine the precise claim at issue.  In his Second Amended Complaint, Jordan-Benel alleges a cause of action for breach of contract based on Defendants' implied agreement to compensate and credit him as a writer/creator should his screenplay idea be used. He alleges that Defendants breached this agreement by "utilizing and profiting from Plaintiff's ideas without compensation or credit to Plaintiff."  He also prays for compensation and credit as a writer in his cause of action for declaratory relief.  In sum, Jordan-Benel appears to allege two theories of breach of an implied-in-fact contract (failure to pay and failure to credit) and two controversies for declaratory relief (right to compensation and right to credit for future *Purge* films).

However, during oral argument before this court, counsel for Jordan-Benel and counsel for Defendants represented that Jordan-Benel's claims for credit are no longer part of this case.  The district court apparently understood as much, as it did not explicitly address Jordan-Benel's "failure to credit" claims in its order denying Defendants' anti-SLAPP motion, and it dismissed on other grounds Jordan-Benel's cause of action for declaratory

relief.[3]  Accordingly, we only address whether anti-SLAPP applies to Jordan-Benel's implied-in-fact contract claim in which Defendants' failure to pay is the alleged breach.[4]

Having identified the claim at issue, we now address whether the district court properly concluded that it does not arise from protected free speech activity.

---

[3] The district court's order repeatedly refers to Jordan-Benel's "claim," but concludes that Jordan-Benel's "claims" are not subject to anti-SLAPP.  We interpret the district court's reference to "claims" to mean that Jordan-Benel's breach of contract claim *and* corresponding declaratory relief claim seeking payment are not subject to anti-SLAPP, but the district court can clarify this issue on remand.

[4] We note, though, that the application of anti-SLAPP to any abandoned claims may still be relevant on remand—for example, in the case of a motion for attorney's fees.  *See Pfeiffer Venice Props. v. Bernard*, 123 Cal. Rptr. 2d 647, 652 (Cal. Ct. App. 2002) ("[B]ecause a defendant who has been sued in violation of his or her free speech rights is entitled to an award of attorney fees, the trial court must, upon defendant's motion for a fee award, rule on the merits of the SLAPP motion even if the matter has been dismissed prior to the hearing on that motion.").  In ruling on a separate motion to strike, the district court dismissed with prejudice Jordan-Benel's cause of action for declaratory relief after Jordan-Benel conceded it was foreclosed by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  Defendants contend that although the cause of action for declaratory relief was dismissed with prejudice on other grounds, they would have succeeded in striking it under anti-SLAPP, so they should be deemed to have "prevailed" within the meaning of the statute, entitling them to attorney's fees and costs.  We leave consideration of that issue to the district court on remand.  Should the district court re-visit anti-SLAPP on remand, it should be aware of the California Supreme Court's recent decision in *Baral v. Schnitt*, 376 P.3d 604, 613-14 (Cal. 2016), which explained that an anti-SLAPP motion may strike distinct claims within a cause of action, even if the entire cause of action is not subject to anti-SLAPP.

**B. Jordan-Benel's Implied-in-Fact Contract Claim Does Not Arise From Protected Free Speech Activity**

As discussed, a defendant's initial burden on an anti-SLAPP motion is to show that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech. *Mindys Cosmetics, Inc.*, 611 F.3d at 595. We determine whether a defendant has met this burden by asking two questions: (1) From what conduct does the claim arise? and (2) Is that conduct in furtherance of the rights of petition or free speech? The key dispute in this case involves the first question.

Defendants argue that Jordan-Benel's implied-in-fact contract claim arises from the creation, production, distribution, and content of the films because Jordan-Benel would not have a claim but for that activity. Jordan-Benel, on the other hand, argues that even if producing a popular film series were protected free speech activity, his claim does not arise from that activity because it was not the specific wrongful act that gives rise to his claim. Rather, he claims that the failure to pay was the wrongful act. We agree with Jordan-Benel.

    i.   "Arising From" Protected Activity

In interpreting the anti-SLAPP statute, we "must begin with the pronouncements of the state's highest court." *See Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010). As the California Supreme Court has explained, "that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such . . . . [T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Navellier*, 52 P.3d at 709; *see also City of Cotati*

*v. Cashman*, 52 P.3d 695, 700 (Cal. 2002) ("[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity."). These cases suggest that even if a defendant engages in free speech activity that is relevant to a claim, that does not necessarily mean such activity is the basis for the claim.

Because the anti-SLAPP statute and the California Supreme Court do not definitively answer the question of how to pinpoint the conduct from which a claim arises, we turn to guidance from the California Court of Appeal. *See Hilton*, 599 F.3d at 906. The California Court of Appeal has interpreted the anti-SLAPP statute's "arising from" language to mean that a claim is based on whatever conduct constitutes the "specific act[] of wrongdoing" that gives rise to the claim. *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 39, 41–42 (Cal. Ct. App. 2005); *see also Renewable Res. Coal., Inc. v. Pebble Mines Corp.*, 159 Cal. Rptr. 3d 901, 909–10 (Cal. Ct. App. 2013) (explaining that "the gravamen of an action is *the allegedly wrongful and injury-producing conduct* that provides the foundation for the claims"). Put another way, a court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging. *See Wang v. Wal-Mart Real Estate Bus. Trust*, 63 Cal. Rptr. 3d 575, 591 (Cal. Ct. App. 2007) (holding that anti-SLAPP did not apply to a claim for breach of contract because "[t]he overall thrust of the complaint challenge[d] the manner in which the parties privately dealt with one another, on both contractual and tort theories, and d[id] not principally challenge the collateral activity of pursuing governmental approvals.").

In sum, for purposes of anti-SLAPP, the conduct from which a claim arises is the conduct that constitutes the specific act of wrongdoing challenged by the plaintiff. We

must now examine what conduct gives rise to a breach of implied-in-fact contract claim like the one alleged here.

###    ii.    Breach of Implied-in-Fact Contract

A breach of implied-in-fact contract claim like the one alleged here is known as an "idea theft" claim. The general rule is that ideas are not subject to protection as property. *Desny v. Wilder*, 299 P.2d 257, 265 (Cal. 1956). However, the California Supreme Court has held that contract law may provide protection to a person who submits an idea to others with the understanding that the idea is submitted in consideration for a promise of payment for its use. *Id.* at 268–69.

To state a claim for breach of an implied-in-fact contract based on the submission of a screenplay, a plaintiff must allege that: (1) he submitted the screenplay for sale to the defendants; (2) he conditioned the use of the screenplay on payment; (3) the defendants knew or should have known of the condition; (4) the defendants voluntarily accepted the screenplay; (5) the defendants actually used the screenplay; and (6) the screenplay had value. *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 629 (9th Cir. 2010) (citing *Mann v. Columbia Pictures, Inc.*, 180 Cal. Rptr. 522, 533 n.6 (Cal. Ct. App. 1982)). California law therefore recognizes an "idea theft" cause of action based on the "implied promise to pay the reasonable value of the material disclosed." *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004) (quoting *Landsberg v. Scrabble Crossword Game Players, Inc.*, 802 F.2d 1193, 1196 (9th Cir. 1986)), *opinion amended on denial of reh'g*, 400 F.3d 658 (9th Cir. 2005). This "implied promise to pay" is an "extra element that transforms the action from one arising under the ambit of the [Copyright Act] to one sounding in contract." *Id.*

Whereas the creation of a film might be the basis for a copyright infringement claim, that act alone will not support an "idea theft" breach of contract claim because the breach is not the defendant's use of the idea. *See id.* The breach is captured in that "extra element"—the failure to pay for the use of an idea after having made an implied promise to pay. *Id.*

We agree with the district court that the conduct or act underlying Jordan-Benel's breach of implied-in-fact contract claim is Defendants' failure to pay for the use of the screenplay idea. This conclusion is compelled by the fact that the failure to pay was the specific act of wrongdoing alleged by Jordan-Benel to give rise to a legal claim. Defendants are correct that the creation of *The Purge* films was not collateral to the principal purpose of the transaction between Jordan-Benel and Defendants. But Jordan-Benel's claim does not challenge the activity of filmmaking at all. In fact, he desperately wanted the film to be made. Because the "overall thrust of the complaint" challenges Defendants' failure to pay for the use of his idea, we hold that the failure to pay is the conduct from which the claim arises. *See Wang*, 63 Cal. Rptr. 3d at 591.

### iii.     Defendants' "But for" Approach is Overbroad

Defendants assert that regardless of their alleged failure to pay, Jordan-Benel would have no claim "but for" the production and release of the films, so his claim necessarily arises from that activity. Defendants' interpretation of "arising from" is based, in part, on our use of the phrase "but for" in previous anti-SLAPP cases. *See Doe*, 730 F.3d at 955; *see also Mindys Cosmetics*, 611 F.3d at 598. However, Defendants ignore an important difference between those cases and this one.

In *Doe*, the plaintiff, a gang informant, alleged that he agreed to be interviewed for a television program on the condition that his face and other identifying features would be concealed. 730 F.3d at 950. The broadcast ultimately failed to conceal his identity, so the plaintiff brought suit for false promise, among other claims. *Id.* at 952. The district court denied an anti-SLAPP motion. *Id.* at 953. We reversed and ruled that anti-SLAPP applied because "[b]ut for the broadcast and Defendants' actions in connection with that broadcast, Plaintiff would have no reason to sue Defendants." *Id.* at 955.

*Doe* does not stand for the proposition that a claim arises from any and all conduct that is the "but for" cause of the claim. When we used the phrase "but for" in *Doe*, we were referring to the specific wrongful act that gave rise to the claim: the broadcast of the plaintiff's identity. *See id.* ("Plaintiff's lawsuit arises directly from Defendants' act of broadcasting *Gangland*."). Similarly, in *Mindys Cosmetics*, a case involving malpractice and breach of fiduciary duty claims against the plaintiff's attorney, we were referring to the specific wrongful act that gave rise to the claims when we said, "But for the trademark application, Mindys would have no reason to sue Kamran." 611 F.3d at 598. Here, unlike in *Doe* and *Mindys Cosmetics*, the alleged protected free speech activity—creation and distribution of major motion pictures—was not the specific wrongful act that gave rise to the claim.

Because the target of Jordan-Benel's claim is not actually the expressive works (*The Purge* films), applying a "but for" analysis in this case would threaten to subject plaintiffs to the burden and expense of litigating anti-SLAPP motions in cases where protected free speech activity is not the focus of the claim. By way of example, the district court

considered a hypothetical newspaper company that agreed to pay a columnist a fee for each article published by the newspaper. If the newspaper company went on to publish one of the columnist's articles without paying her, and the columnist brought suit seeking payment of her fee, the newspaper company could subject the columnist to an anti-SLAPP motion, relying on Defendants' theory to argue that anti-SLAPP applies because "but for" the newspaper's publication of the article, the columnist would have no claim. Similarly, if a recording artist's pay was tied to the number of records sold, and the artist sued the record label for breach of contract for non-payment, the record label could argue that "but for" the creation and distribution of the record, the artist would have no claim.

While this sort of parade of horribles argument was inapt in *Doe*, it is a valid concern here. In *Doe*, the plaintiff argued that if anti-SLAPP applied to his claim, every contract claim involving television would be subject to dismissal. 730 F.3d at 955 n.3. We disagreed because even if anti-SLAPP applies, a plaintiff may still proceed with claims that challenge free speech activity if the claims possess minimal merit. *Id.* But that does not address the potential consequences of Defendants' position in this case, where Defendants purport to apply anti-SLAPP to claims in which protected activity is not actually the challenged conduct. *Id.* Unlike in *Doe*, our acceptance of Defendants' "but for" theory in this case would lead to an unprincipled expansion of anti-SLAPP.

We recognize that the anti-SLAPP statute is to be construed broadly. *Safari Club Int'l v. Rudolph*, 845 F.3d 1250, 1260 (9th Cir. 2017) (citing Cal. Civ. Proc. Code § 424.16(a)). But, as discussed, the California courts have said nothing to suggest that the State intended its anti-

SLAPP law to apply when protected activity is not the target of a claim. We further note that limiting the application of anti-SLAPP to claims that actually challenge free speech activity does not create an impermissible intent-to-chill requirement. *Cf. Equilon Enterprises v. Consumer Cause, Inc.*, 42 P.3d 685, 690 (Cal. 2002) (rejecting attempt to impose an intent-to-chill requirement). Assessing whether the specific wrongful act giving rise to a claim is protected activity is different from inquiring into the plaintiff's subjective motivations for bringing a claim. *Cf. id.* at 688.

## C. Defendants' Failure to Pay Was Not Conduct in Furtherance of the Right of Free Speech

Because we have determined that Jordan-Benel's claim arises from Defendants' failure to pay, our final point of inquiry is whether that conduct was in furtherance of the right of free speech. We hold that it was not. Notably, Defendants do not even argue that their failure to pay Jordan-Benel was free speech activity, and they cannot cite a single case in which the anti-SLAPP statute has been applied to an "idea theft" claim in which failure to pay is the alleged breach. Defendants' citation to *Wilder v. CBS Corp.*, No. 2:12-cv-8961-SVW-RZ, 2016 WL 693070 (C.D. Cal. Feb. 13, 2016), is of no help.

In *Wilder*, the plaintiff wrote a treatment for a television show and pitched it to a representative of Sony. *Id.* at *1–2. The representative told the plaintiff that Sony was not going to use the idea. *Id.* at *2. Less than two years later, CBS aired a show almost exactly like the one the plaintiff had pitched. *Id.* The plaintiff alleged that Sony's representative had "very close ties" with a representative from CBS, giving CBS "direct and easy access" to the treatment. *Id.* The plaintiff brought claims for breach of implied contract against Sony and tortious interference against CBS. *Id.* at

*1.  The district court granted CBS's anti-SLAPP motion to strike the tortious interference claims.  *Id.* at *11.

While the facts of *Wilder* are very similar to this case, there is a key difference.  The anti-SLAPP motion in *Wilder* was brought by CBS against the tortious interference claims. Sony did not bring an anti-SLAPP motion to strike the breach of implied contract claim.  Thus, while the *Wilder* case did involve a traditional "idea theft" breach of implied-in-fact contract claim, that claim was not the subject of an anti-SLAPP motion.

The anti-SLAPP motion in *Wilder* was successful because the activities underlying the plaintiff's tortious interference claims against CBS were the development, production, and distribution of the television show.  *See id.* at *10.  As the plaintiff alleged, it was those actions that were intended to, and did, induce Sony to breach its implied contract with Wilder.  *Id.*  Here, there is no such tortious interference claim, and Jordan-Benel does not allege that any activity involved in creating the films was a breach of his implied contract for compensation with Defendants. Accordingly, *Wilder* is inapposite.

## V. CONCLUSION

As to the breach of implied-in-fact contract claim based on Defendants' failure to pay Jordan-Benel, the district court's order is **AFFIRMED.**  We decline to consider, in the first instance, the application of anti-SLAPP to any claims based on Defendants' failure to credit Jordan-Benel as a writer/creator of *The Purge*.